# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**Jeffery Allen Mohlman,**

    *Plaintiff,*

v.

**Financial Industry Regulatory Authority, Inc.,** *et al.*,

    *Defendants.*

Case No. 3:19-cv-154
Judge Thomas M. Rose

---

### ENTRY AND ORDER GRANTING MOTION TO DISMISS BY DEFENDANTS FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., SUSAN SCHROEDER, AND HEIDI BROWN, ECF 5, AND TERMINATING CASE.

---

Defendants Financial Industry Regulatory Authority, Inc. ("FINRA"), Executive Vice President of FINRA's Department of Enforcement. Susan Schroeder, and Associate Principal Investigator in FINRA's Department of Enforcement, Heidi Brown have filed a Motion to Dismiss, (ECF 5), Plaintiff Jeffrey Allen Mohlman's Complaint (ECF 4).

The complaint asserts Defendants committed fraud by inducing Plaintiff to fail to testify at a second disciplinary interview, thus allegedly fraudulently avoiding an alleged requirement that Defendants consider mitigating factors in the Plaintiff's disciplinary case, depriving Plaintiff of his reputation in the securities and insurance industries and depriving him of the ability to pursue his profession and career in violation of Ohio Constitution Article I, Section 16. (ECF 4).

**I.      Background**

Plaintiff Jeffery Allen Mohlman alleges he has been a securities professional since July 6, 2001 and obtained National Association of Securities Dealers Series 6, Series 7 and Series 63 licenses. On June 26, 2012 Plaintiff registered with Questar Capital Corporation. As a representative of Questar, Plaintiff alleges he "had conversations with approximately six family members and friends concerning WMA Enterprises, Inc. ("WMA"). Plaintiff alleges he did not attempt to sell investments with WMA and that he did not receive compensation of any sort from WMA. Plaintiff further alleges that on October 31, 2014, presumably after his discussions with family and friends not attempting to sell them investments with WMA, he learned from television news that WMA was a Ponzi scheme. ECF 4, PageID 98-99.

Questar Capital Corporation terminated Mohlman for the stated reason of failing to follow its policies and procedures regarding his participation in the private securities transactions. ECF 5-4.

Defendant FINRA initiated an investigation of Mohlman in that same year. Id. After appearing for one full day of on the record testimony in New York, Mohlman chose not to appear for a second session in violation of FINRA Rules 8210 and 2010. AWC, p. 2.

On September 17, 2015, Mohlman signed a Letter of Acceptance, Waiver and Consent ("AWC"). Complaint, ECF 4, PageID 100, ¶ 29. Mohlman was represented by counsel, and both Mohlman and his counsel signed the AWC. Id. Mohlman consented to a permanent bar from the securities industry. Id. FINRA did not pursue the case further and did not issue a formal public complaint against Mohlman. Id. at p. 3.

Under the AWC, Mohlman waived his right to litigate the allegations and his right to appeal any litigated decision through the administrative process set forth in the Securities Exchange Act,

15 U.S.C. § 78a-78mm. AWC, p. 3. Mohlman also acknowledged that the AWC would become part of his "permanent disciplinary record," that the AWC would "be made available through FINRA's public disclosure program in response to inquiries about [his] disciplinary record," and that "FINRA may make a public announcement concerning this agreement and the subject matter thereof . . ." Id. at p. 4. He also agreed:

> I may not take any action or make or permit to be made any public statement including in regulatory filings or otherwise, denying, directly or indirectly, any finding in this AWC or create the impression that the AWC is without factual basis. I may not take any position in any proceeding brought by or on behalf of FINRA, or to which FINRA is a party, that is inconsistent with any part of this AWC.

Id. at p. 4. FINRA subsequently published, and continues to publish, the final regulatory and disciplinary action taken with respect to Mohlman.

Mohlman lost his Ohio Securities license on October 16, 2018 when the Ohio Division of Securities "repeated the statement of action suggested by FINRA, Schroeder, Brown and the Does that he had failed to cooperate in its investigation."

On April 26, 2019, Mohlman filed suit in the Common Pleas Court of Montgomery County, Ohio. ECF 4. On May 24, 2019, Defendants removed the case to this Court. ECF 1.

## II.     Standard

Federal Rule of Civil Procedure. 12(b)(1) provides that the defense of lack of subject matter jurisdiction may be raised by motion, and Rule 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, it shall dismiss the action." Failure to exhaust administrative remedies deprives a court of subject matter jurisdiction. *Barbara v. New York Stock Exchange*, 99 F.3d 49 (2d Cir. 1995).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); see also, *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 546 (6th Cir. 2007). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6). *Ashcroft*, 129 S. Ct. at 1949.

A court may consider a AWC for purposes of this motion to dismiss without converting the motion into one for summary judgment. *Dials v. Watts Bros. Moving & Storage Sys., Inc.*, No. C2-03-513, 2003 U.S. Dist. LEXIS 21413, at *7 (S.D. Ohio Nov. 24, 2003) ("[W]here materials are central to the claims asserted, a defendant may introduce these materials if the plaintiff fails to do so" without converting a motion to dismiss for failure to state a claim into a motion for summary judgment.); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.").

### III. Analysis

It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."

*Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938). "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S. Ct. 1081 (1992), overruled in part on other grounds, *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819 (2001).

The "doctrine of exhaustion of remedies applies with equal force to the disciplinary proceedings of the NASD." *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979). The Securities Exchange Act of 1934, codified as amended at 15 U.S.C. § 78a-78mm, "creates a comprehensive procedure to safeguard due process in disciplinary hearings and for administrative and judicial review of NASD disciplinary actions." *Swirsky v. NASD*, 124 F.3d 59, 62 (1st Cir. 1997). Specifically, under the Exchange Act, aggrieved persons are required to exhaust their administrative remedies at the SEC, and then, if dissatisfied, seek review before a United States Court of Appeals. 15 U.S.C. § 78s and § 78y. Failure to exhaust the Exchange Act's review procedures "render[s] the district court without jurisdiction to entertain the suit." *First Jersey*, 605 F.2d at 700; see also, *Epstein v. FINRA*, No. 09-1567, 2009 U.S. Dist. LEXIS 29828, *8 (D. N.J. Apr. 9, 2009) ("the exclusive remedy on [challenges to the disciplinary process] after a FINRA disciplinary decision is to exhaust remedies"). The Court in *PennMont Securities* found that "it is essential that courts refrain from interfering with the process unnecessarily." 586 F.3d at 246 (dismissing action for lack of subject matter jurisdiction where plaintiff failed to exhaust administrative remedies) (citing *First Jersey*); see also, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD*, 616 F.2d 1363, 1370 (5th Cir. 1980); *Santos-Buch v. FINRA*, 32 F. Supp. 3d 475 (S.D.N.Y. 2014), (no subject matter jurisdiction over lawsuit by former registered representative seeking declaratory and administrative relief barring FINRA's reposting of plaintiffs AWC on

BrokerCheck following rule change mandating permanent disclosure of final FINRA disciplinary actions), affd, 591 Fed. Appx. 32 (2015); *Coleman v. NASD*, No. 99 Civ. 248, 1999 U.S. Dist. LEXIS 7172 (S.D.N.Y. May 14, 1999); *McLaughlin, Piven, Vogel, Inc. v. NASD*, 733 F. Supp. 694, 696 (S.D.N.Y. 1990).

Congress set forth the exclusive means for review of final actions in FINRA disciplinary proceedings when it enacted the Exchange Act, with its system of appeal of FINRA decisions to the SEC, and exclusive review by the United States Courts of Appeals. 15 U.S.C. § 78y. Congress did not provide for seeking damages or equitable relief in state courts or federal district courts.

Plaintiff asks this Court to set aside his final regulatory settlement. When Plaintiff executed the AWC, he waived his rights to exercise these administrative remedies, or to take any action to dispute its findings or "create the impression that [it] is without factual basis." AWC, p. 4. Plaintiff's waiver of his administrative remedies by executing the AWC does not eliminate the existence of the administrative remedies, nor does it create subject matter jurisdiction for him to challenge the AWC in this Court. Congress foreclosed this approach when it enacted the Exchange Act, with its system of appeal of FINRA decisions to the SEC, and exclusive review by the United States Courts of Appeals. 15 U.S.C. § 78y.

FINRA is immune "from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions." *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001) (holding that a self-regulating authority like FINRA is "immune from liability for claims arising out of the discharge of its duties under the Exchange Act"); accord: *Lucido v. Mueler*, No. 08-15269, 2009 U.S. Dist. LEXIS 89775, *19 (E.D. Mich. Sep. 29, 2009) (granting FINRA's

motion to dismiss, in part, on FINRA's immunity from claims seeking to expunge registered representative's criminal record from FINRA's CRD database), affd 2011 U.S. App. LEXIS 17632 (6th Cir. 2011); *Standard Inv. Chartered, Inc. v. NASD*, 637 F.3d 112, 116 (2d Cir. 2011); *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) (affirming dismissal of class action against NASD and finding that "[w]hen [a self-regulating authority] acts under the aegis of the Exchange Act's delegated authority, it is absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC"); *DL Capital Group LLC v. NASDAQ Stock Market, Inc.*, 409 F.3d 93, 97 (2d Cir. 2005) (holding that when a self-regulating authority engaged in conduct consistent with the powers delegated to it pursuant to the Exchange Act and the regulations and rules promulgated thereunder, self-regulating authority is immune from suit); *Scher v. NASD*, 386 F. Supp. 2d 402, 406 (S.D.N.Y. 2005) (dismissing complaint against NASD and related entities because action barred by immunity granted to NASD "for conduct falling within the scope of the [NASD's] regulatory and oversight functions") (citation omitted), affd, 2007 U.S. App. LEXIS 4692 (2d Cir. 2007); *P'ship Exch. Sec. Co. v. NASD*, 169 F.3d 606, 608 (9th Cir. 1999) (holding that the NASD was protected by immunity for its actions taken "under the authority delegated to it by the Exchange Act"); *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1215 (9th Cir. 1998) ("when Congress elected 'cooperative regulation' as the primary means of regulating the over-the-counter market, the consequence was that self-regulatory organizations had to enjoy freedom from civil liability when they acted in their regulatory capacity"); *American Benefits Group, Inc. v. NASD*, No. 99 Civ. 4733, 1999 U.S. Dist. LEXIS 12321, *24 (S.D.N.Y. Aug. 10, 1999) (holding that "the NASD is entitled to absolute immunity when exercising its authority within the scope of its official duties").

FINRA's regulatory immunity extends to its employees acting within the "aegis of the Exchange Act's delegated authority." *P'ship Exch. Sec. Co.*, 169 F.3d at 608 (citation omitted). Because FINRA can act only through its employees, FINRA employees may rely upon and invoke immunity. *Standard Inv. Chartered*, 637 F.3d at 115 ("[t]here is no question" that officers of a self-regulating authority are entitled to immunity for actions taken in discharging their regulatory responsibilities); *Hurry v. Fin. Indus. Regulatory Auth.*, No. CV-14- 02490-PHX-ROS, 2015 U.S. Dist. LEXIS 180020, at *15 (D. Ariz. Aug. 5, 2015) (dismissing claim against FINRA employee for actions taken in his role as a FINRA employee).

Plaintiff complains that in entering into the AWC, FINRA allegedly failed to consider mitigating factors such as the death of a friend, the suicide of his brother-in-law and his own medications and medical history. Complaint, ECF 4, PageID 100, 1126. He argues that the failure to consider these factors somehow led FINRA to fraudulently induce him to accept a bar from the securities industry. Id. ECF 4, at PageID 101, ¶ 34. As result, Plaintiff seeks $891,000 in damages (legal fees, residual fees for lost business opportunities, reputational rehabilitation specialist fees, therapy fees, and punitive damages) against FINRA and Defendants Schroeder and Brown. Id.

There is no recognized right to sue FINRA for failing to consider mitigating factors. Moreover, entering into settlements of disciplinary actions falls within FINRA's regulatory authority. 15 U.S.C. § 78o-3(i). This is the precise conduct to which a self-regulating authority's immunity is intended to apply. *D'Alessio*, 258 F.3d at 105. This action against Defendants is barred by FINRA's absolute regulatory immunity, and this case will be dismissed.

Moreover, neither the Exchange Act, nor any other provision of the federal securities laws provides for a cause of action against a self-regulating authority (or its employees) for acts or omissions in connection with its duties as a securities regulator. To the contrary, courts routinely hold that no private right of action exists against a self-regulating authority like FINRA for its regulatory acts. *In re Series 7*, 548 F.3d at 114 ("By specifically adopting an appeals process which does not provide monetary relief, Congress has displaced claims for relief based on state common law"); *Desiderio*, 191 F.3d at 208; *MM&S Fin., Inc. v. NASD*, 364 F.3d 908, 911-912 (8th Cir. 2004) ("the Exchange Act does not create a private right of action against the NASD defendants for violating their own rules" and a party's attempt to bypass the absence of a private right of action by asserting a claim under state contract law is "fruitless"); *Spicer v. Chicago Bd. of Options Exchange, Inc.*, 977 F.2d 255, 260 (7th Cir. 1992); *Matyuf v. NASD Dispute Resolution, Inc.*, No. 04-540, 2004 U.S. Dist. LEXIS 25174, *10 (W.D. Pa. Oct. 4, 2004); *In re Olick*, 99-cv-5128, 2000 U.S. Dist. LEXIS 4275, *11 (E.D. Pa. Apr. 4, 2000) (a party "may not maintain a private cause of action against the NASD under the Exchange Act, or at common law, for regulatory actions taken by the NASD"); *Feins v. AMEX*, 81 F.3d 1215 (2d Cir. 1996); *Meyers v. NASD*, No. 95-cv-75077, 1996 U.S. Dist. LEXIS 6044, *14 (E.D. Mich. Mar. 29, 1996) (court dismissed action against FINRA finding allegations were "an unsuccessful attempt to create a private cause of action for the violation of the NASD rules where none exists"); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980); *Pinnacle Sec. Inv. Assocs., L.P. v. AMEX*, 946 F. Supp. 290, 293-94 (S.D.N.Y. 1996); *Shahmirzadi v. Smith Barney, Harris Upham & Co. Inc.*, 636 F. Supp. 49, 52 (D.D.C. 1985).

The United States Supreme Court has established a standard for determining whether an implied right of action exists where the applicable statute does not expressly provide a private right of action. That test, developed in a trilogy of cases, *Cort v. Ash*, 422 U.S. 66 (1975), *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979), and *Transamerica Mortg. Advisors, Inc. (tama) v. Lewis*, 444 U.S. 11 (1979), is "one of statutory construction." *Touche Ross*, 442 U.S. at 568. Under the comprehensive regulatory scheme for the securities industry established by Congress, FINRA's performance of its responsibilities is subject to the strict, on-going oversight of the SEC. 15 U.S.C. § 78o-3, et seq., § 78s.

Plaintiff seeks monetary damages and equitable relief from FINRA's regulatory acts — specifically in failing to consider mitigating factors when entering into the AWC. There is, however, no private right of action against FINRA (or its employees) for its regulatory acts — including entering regulatory settlements. There is no right to seek relief from this Court for relief from the terms of a voluntary regulatory settlement of a disciplinary action agreeing to be barred from the securities industry. *Buscetto v. FINRA*, No. 11-6308, 2012 U.S. Dist. LEXIS 65116, *11-12 (D. N.J. May 9, 2012) (dismissing complaint to vacate FINRA disciplinary settlement and to expunge it from plaintiffs BrokerCheck record) (citing *Dobbins v. NASD*, No. 5:06-cv-2968, 2007 U.S. Dist. LEXIS 61767 (N.D. Ohio Aug. 22, 2007) (dismissing complaint against NASD where broker failed to establish a legal claim for expungement of his CRD record as a matter of law)).

Plaintiff had the opportunity to litigate a FINRA disciplinary complaint and subsequently seek administrative review of any result at the SEC and thereafter in a United States Court of Appeals, which were the administrative remedies available to him under the Exchange Act.

Instead, he accepted a settlement resulting in a bar from the securities industry, and he expressly waived his right to administrative review. AWC, p. 3. Plaintiff cannot now ask this Court to reconsider the decision he made, while represented by counsel, several years ago.

Finally, the only stated claim in the Complaint is labeled "fraud" and rests on the notion that FINRA's regulatory actions somehow violated the Ohio Constitution Article I, Section 16. Complaint, PageID 101, ¶¶ 32-33. This claim fails as a matter of law. First, the Ohio Supreme Court has held that Article I, Section 16 does not create an independent cause of action for damages. *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 18. Accord: *Melendez v. Sinclair Cmty. College*, No. 3:05-cv-338, 2007 U.S. Dist. LEXIS 1409, *21-.23 (S.D. Ohio Jan. 8, 2007) ("there is no private right of action in Ohio law for violations of Article 1, Section 16"); *Talley v. City of Cleveland*, No. 1:14 cv 1697, 2015 U.S. Dist. LEXIS 8730, *12 (N.D. Ohio Jan. 26, 2015) ("The Supreme Court of Ohio has not recognized the existence of a private cause of action for damages under the Ohio Constitution").

Article I, Section 16 of the Ohio Constitution does not apply to private parties where there is no state action. *In re: Adoption of M. C.*, 131 Ohio St.3d 1476, 2012-Ohio-896, 962 N.E.2d 805 (Fourteenth Amendment provides protection against governmental, not private action); *Wall v. Ohio Permanente Med. Group*, 119 Ohio App.3d 654, 670, 695 N.E.2d 1233, 1244 (8th Dist. 1997) ("The Article I Section 16 due process provision of the Ohio Constitution does not directly apply to private non-governmental employers. . .").

Courts have held without exception that FINRA is a private entity and not a state actor. *Lucido*, 2009 U.S. Dist. LEXIS 89775 at *11 ("Courts have held without exception that [FINRA] is a private actor, not a state actor.") (citation omitted); *McGinn, Smith & Co., Inc. v. FINRA*, 786

F. Supp. 2d 139, 147 (D.D.C. 2011) ("Courts have repeatedly held that FINRA is a private entity and not a government functionary") (citing *D.L. Cromwell Invs., Inc. v. NASD Reg., Inc.*, 279 F.3d 155, 162); *Dobbins*, 2007 U.S. Dist. LEXIS 61767 at *9 ("The absence of state action requires dismissal of the constitutional claims [against NASD]."); *Meyers*, 1996 U.S. Dist. LEXIS 6044 at *23-26 (finding that allowing an amendment to complaint would be futile because NASD's regulatory actions do not constitute state action); *Graman v. NASD*, No. 97-1556-JR, 1998 U.S. Dist. LEXIS 11624, *9 (D.D.C. Apr. 27, 1998) ("Every court that has considered the question has concluded that NASD is not a governmental actor"); *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002) ("It is clear that NASD is not a state actor").

The Complaint concedes that FINRA is a private entity organized as a not-for-profit corporation under Delaware law. Id. at PageID 97, ¶ 4. Because there is no private right of action for damages under Article I, Section 16, and because FINRA and its employees are not "state actors," the Complaint will be dismissed.

## IV. Conclusion

Because Plaintiff failed to exhaust administrative remedies available to him and because Article I, Section 16 of the Ohio Constitution does not create a cause of action against private actors, Defendants' motion to dismiss, ECF 5, is **GRANTED**. The instant case is **DISMISSED,** and the Clerk is **ORDERED** to **TERMINATE** the instant case from the dockets of the United States District Court for the Southern District of Ohio, Western District, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, February 24, 2020.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE